THE ALABAMA and two Scows.[1]

(*Circuit Court, S. D. Alabama.* November, 1884.)

1. MARITIME SERVICES—TOWAGE.

The towage of a steam dredge-boat and her two scows from Mobile to Tampa bay was a maritime service.

2. DREDGE-BOAT AND SCOWS WITHIN ADMIRALTY JURISDICTION.

Where it is the business of a dredge-boat to dig the earth out under the water in the channel to be deepened, and deposit the earth in her scows, which are then towed to the dumping-ground and unloaded, and then towed back for the operation to be repeated,—such dredge-boat and scows are to be treated as one thing or craft, and, as such, their business is largely navigation and water transportation, and they are within the admiralty jurisdiction. *The Hezekiah Baldwin,* 8 Ben. 556, followed.

3. WAIVER OF LIEN.

"By the principles of the maritime law a lien is not lost by the acceptance of notes unless the claimant can show that the lienholder agreed to receive the notes in lieu of the original claim." *The St. Lawrence,* 1 Black, 522.

4. SAME.

The fact that the libelant receipted his account as being paid by note is not, of itself, sufficient to warrant the inference that receiving the note was intended to waive the lien. *The Pride of America,* 19 FED. REP. 607, followed.

Admiralty Appeal.

*L. H. Faith,* for libelants.

*I. L. & G. L. Smith,* for claimants.

PARDEE, J. Under the agreed statement of facts in this case, the contract to tow the steam dredge-boat Alabama and the two scows from the port of Mobile to Tampa bay was a maritime contract, and

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

the services rendered by the tug-boat Mary B. Curtis in so towing the dredge-boat and scows to Tampa bay were, without doubt, maritime services. From these maritime services resulted a lien, the character of which depends upon the question whether or not the dredge-boat and scows should be classed as a ship or ships. If they were not a ship or ships, but only movable property, then only the carrier's lien resulted, and that was lost with the voluntary delivery of the goods to the owner after the carriage was completed. If they were a ship or ships then the lien was a strictly maritime lien, not dependent upon possession, and one that is within the admiralty jurisdiction to enforce by proceedings *in rem* wherever the possession of the *res* can be obtained. So that the question here is practically one of jurisdiction. As laid down by Benedict in his work on Admiralty, and which is in accord with the authoritative decisions on the subject,—

"It is not the form, the construction, the rig, the equipment, or the means of propulsion that establishes the jurisdiction, but the purpose and business of the craft as an instrument of naval transportation." Section 218.

The agreed statement of facts in this case recites:

"That the dredge-boat and scows are not engaged in, nor were they built to be used in, carrying freight or passengers *as a business;* that the sole business for which said dredge-boat and scows were built, and in which they have been used, is dredging out and deepening the water-ways of commerce, though in prosecuting that business the said dredge-boat and scows carry on them said machinery, and large quantities of coal to be used as fuel on said dredge-boat and the tow-boat in towing the dredge and scows."

From the same statement it appears further:

"That the mode of business of said dredge-boat and scows was for the dredge with its machinery to dig the earth out under the water in the channel to be deepened, deposit the earth in the scows, which were then towed to the dumping-ground, unloaded by dumping the earth through their bottoms, and then towed back for the operation to be repeated."

The parties to this case have treated the dredge and scows as one thing, one plant, built and operated as one; as one complete whole carrying on one business, and having but one purpose. If the parties are right in thus treating the dredge-boat and scows as one craft or thing, then it seems clear that the purpose and business of that craft is largely navigation and water transportation. It would be of no use to dig up the earth in the channel unless it should be transported away, and it could not be transported away unless it should be first dug out; and the whole business seems to be the transportation by water of earth and dirt from one place to another place. According to the test authorized by the supreme court in the case of *The Rock Island Bridge,* 6 Wall. 213, the dredge and scows, in this case, must be movable things engaged in navigation. The scows are movable things engaged in navigation, without doubt. The dredge-boat and scows, taken together, are in the same category. The dredge-boat by itself might not be up to the test. The adjudged cases cited by proctors are nearly unanimous in laying down the general principle that

to constitute a ship within the admiralty sense and jurisdiction there must be a water-craft engaged in commerce or in navigation, and it is not necessary to review them, as the principle is conceded.

The case of the floating elevator, *The Hezekiah Baldwin*, 8 Ben. 556, however, seems to be a case exactly parallel to the case of the dredge-boat here. The elevator in that case was capable of being, and its business required it to be, navigated from one place to another. When in place and in operation it lifted grain and placed it aboard another water-craft to be transported. Exactly the same may be said of the dredge-boat Alabama, except that it lifted mud instead of grain. Each aided commerce: the one by loading grain in transit; the other by removing obstructions in the way of commerce by water. When we consider, in addition to this, that the case here shows that in carrying on her business, the Alabama actually navigated the high seas for over 300 miles, it does not seem to be very far-fetched to hold her to be a water-craft engaged in navigation. At all events, I am of the opinion that there can be no doubt about the scows being within the rule, and that there ought not to be any doubt about the dredge-boat. If they all constitute only one thing, then there can be no doubt, for the one thing and business was transportation by water-craft.

The next point made by the claimants under the pleadings and evidence is that the maritime lien for towage was waived because notes were taken by libelants for the towage, and those notes not being paid at maturity were supplemented by other notes, which were not due at the filing of the libel, from which it is claimed that not only was the lien lost, but, if not lost, the suit is premature. In the case of the steamer *St. Lawrence*, 1 Black, 522, the supreme court lay down the rule to be "that by the principles of the maritime law a lien is not lost by the acceptance of notes unless the claimant can show that the lienholder agreed to receive the notes in lieu of the original claim." To the same effect is the rule declared in *The Kimball*, 3 Wall. 37; *The Bird of Paradise*, 5 Wall. 545.

There is nothing in the agreed state of facts in the present case to show that the libelants agreed to receive notes in place of their original claim. It is true that on receiving the original notes libelants signed the towage account presented under the words "Received payment by note, 90 days," but this fact of itself is not sufficient to warrant the inference that receiving the notes was intended to waive the lien. See *Pride of America*, 19 Fed. Rep. 607. As to the suit being premature, because the notes were not due, it follows that as the lien was not lost by taking the notes, whenever the lien was in danger of being lost by transfers of the craft upon which the lien rested, libelants would have a clear right to surrender the notes and insist upon their lien. The prematurity claimed in this case, as the notes are now shown to be long past due and unpaid, would at most only affect the question of costs.

On the whole case, for the reasons given by the district judge, and those outlined here, the decree of the district court will be·affirmed. Proctors for libelants will draugh; and hand in the proper decree for entry.