## THE NEWPORT.

(Circuit Court of Appeals, Second Circuit. March 18, 1902.)

### No. 54.

1. MARITIME LIENS—TOWAGE SERVICES—CONTRACT FOR LIEN.
      Evidence *held* to sustain a finding that there was a common understanding between the parties to a contract for towage services to be rendered to a dredge and scows that the services were rendered upon the credit of the vessels and not of the owner.
2. SAME—JOINT LIEN FOR SERVICES RENDERED TO SEPARATE VESSELS.
      A joint lien cannot be enforced against a dredge and a number of scows used in connection therewith for towage services rendered to all the vessels, although they were rendered under a single contract.
      Shipman, Circuit Judge, dissenting upon the facts.

Appeal from the District Court of the United States for the District of Connecticut.

This cause comes here upon appeal from a decree of the district court, district of Connecticut (107 Fed. 744), in favor of libelant for $1,947, with interest and costs, out of the proceeds of sale of a dredge and four scows.

Le Roy S. Gove, for appellant.

Howard H. Knapp, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The Bridgeport Towing Line is a partnership, of which John McNeil was managing partner. Morris B. Brainard was a contractor to dredge New London Harbor, and in 1899 hired of the towing line a tug to do the towing necessary for the dredge Newport and four scows, 6, 7, 9, and 10, in the harbor of New London, for the sum of $800 per month. The tug Confidence was sent to New London, and performed the required services for the dredge and scows from August 3, 1899, to December, 1899. A balance of $1,947 was and is unpaid. Brainard was a nonresident of Connecticut, and was apparently not a permanent resident in any state. He made the agreement by letter and telephone or telegraph, and in October, 1899, wrote Capt. McNeil to send bills for towing made out for the months worked and against the dredge worked for. He was in poor credit, in straits for money, and the services were rendered upon the credit of the dredge and scows. In December, 1899, he became deeply insolvent, his creditors, among them the Bridgeport Towing Line, libeled the vessels, and his conduct showed that he knew that the debts had been incurred upon their credit. The claims amounted to some $15,000 or $16,000. By agreement of the claimant, Laughlin, and all the other parties, the dredge and scows were sold, and the proceeds, amounting to some $9,000 or $10,000, were paid into court. The Bridgeport Towing Line libeled the dredge and scows in one libel for its entire debt. A decree for $1,947, interest and costs, amounting to $2,180.93, against the dredge and scows and their avails, was rendered, from which Joseph Laughlin, the claimant, appealed. He had made claim to the scows, averring that he was their owner, and had filed a libel against the dredge for moneys advanced for her benefit and for the charter hire of the scows. The commissioner found that the evidence did not show a bona fide valid transfer of the scows to Laughlin, and dismissed his claims for advances and charter hire. The disallowance was sustained by the court. The evidence fully justifies the finding of the commissioner that the alleged transfer was fraudulent and void as against the creditors of Brainard. From the decree of the court dismissing his libel Laughlin did not appeal, and he is now, as against creditors, without title to any of the avails of the vessels.

We agree with the district judge, who said that "upon the practically undisputed evidence" he found "that there was a common understanding and intention that there should be a lien for these supplies and repairs." The case is eminently one where "personal credit of the owner, instead of the vessel, was in the highest degree improbable." The Havana (D. C.) 54 Fed. 201.

The claimant specifically objected to the libel, and attacks the decree because it established a joint lien against the avails of the five vessels, and for services rendered by contract to or for the benefit of a number of vessels a joint lien is not permissible, and should not have been sought in a single libel.

In Saylor v. Taylor, 23 C. C. A. 343, 77 Fed. 476, the court of appeals for the Fourth circuit affirmed a decree of the district court for the Eastern district of Virginia, which sustained a libel in be-

half of the owners of a tug for services in towing a dredge and scows, and decreed a lien on the proceeds of the sale of the dredge and scows, but it does not appear that any question was raised as to the validity of a joint lien. In Munn v. The Columbus (D. C.) 65 Fed. 430, the precise point was presented, libelant undertaking to enforce a supposed joint lien against a dredge and scows for the entire price of all the services rendered to these vessels and others of the same plant. The district court held that there could be no joint lien for several services. Appeal was taken to the circuit court of appeals for the Third circuit, which affirmed the decision below, saying:

"To sustain this libel would be to apply the law of admiralty lien in a manner for which there is no precedent. The cases cited for the appellant do not support his contention. The Alabama (C. C.) 22 Fed. 449, decided nothing but that a dredge which is used in connection with a scow is itself a vessel, within the maritime law; but, conceding this, it does not follow that several dredges and several scows, even when used together, constitute but a single vessel; and the cases which hold that the wrecking apparatus of a wrecking schooner (The Edwin Post [D. C.] 11 Fed. 602), the whaling boats of a whaling ship (Hoskins v. Pickersgill, 3 Doug. 222), and the boats carried on deck or towed astern a fishing schooner (The Merrimac [D. C.] 29 Fed. 157), may be regarded as part of the craft to which they respectively belong, are not authority for the proposition that a number of distinct vessels are to be treated as one thing, merely because they happen to be associated in the same enterprise."

We concur in this conclusion.

The circumstance that in the proceeding brought by Laughlin to enforce claim for advances and charter it was held that the transfer of the vessels to himself was not bona fide and void as to creditors does not change the situation. As against Brainard the transfer was valid. Laughlin is the claimant, has appealed, and is as much entitled to raise the objection as Brainard would be if he were claimant. What disposition may be made of the money in the registry of the district court—which that court decreed should be paid to the towing company—is a question which we cannot determine on the present record, since we are not advised whether all others who were held entitled to share in the proceeds were paid in full. As against creditors of Brainard, whatever title Laughlin got by the attempted transfer cannot avail him.

The decree is reversed, with costs, and cause remanded to the district court, with instructions to decree in conformity with the views expressed in this opinion.

SHIPMAN, Circuit Judge. I dissent from the conclusion of the majority of the court in the above-entitled cause, which reverses the decree, and directs the district court to enter a new decree in accordance with the opinion, because I think that the original decree should not be changed. I concur in the conclusion that a joint lien for the entire value of the services separately rendered to a number of vessels is not, as a rule, to be enforced against the whole number of vessels, although they were associated in one enterprise, and the services were performed under a single contract, but do not think that a reversal of the decree is called for under

the circumstances of this case, as disclosed in the opinion of the majority. Services were rendered by the libelant to the dredge and four scows, upon their credit, for which about $2,000 are due. The amount and value rendered to each vessel could have been ascertained by the district court. The record shows that the services were rendered about equally. The aggregate amount is unquestioned, and the money in the registry of the court due to other lienors has been distributed without objection.

Laughlin alone makes the point that, as the decree was for a joint lien, it should be reversed. The opinion of the majority finds that he is, as against creditors, without title to any of the avails of the vessels. He is entitled to raise the objection because there was a paper transfer of the scows to him from Brainard, but, as against creditors of Brainard, whatever title he got by the attempted transfer cannot avail him. In this position of affairs, Laughlin being the only appellant and being unable to gain any advantage by a new decree or to vary the old decree in favor of himself, and there being no other dissatisfied lienor, I see no advantage in reversing the decree or of having an additional hearing in the district court. The money now in the registry of the court from the avails of the libeled vessels equitably belongs to the Bridgeport company, complete justice will be done by an affirmance of the decree, and I do not think that the payment of this debt should be delayed by the interposition of this court.