## THE WARNER MILLER CO.

(District Court, E. D. New York. February 4, 1903.)

1. MARITIME LIENS—NEW YORK STATUTE—JOINT LIEN CLAIMED ON TWO VESSELS.

Under 1 Laws N. Y. 1897, c. 418, art. 2, which provides that a debt for certain materials and articles furnished to a vessel shall be a lien thereon, but shall cease to be a lien unless the lienor shall file a notice of lien, "containing the name of the vessel, the name of the owner, if known, the particulars of the debt, and a statement of the amount claimed to be due from such vessel," a lien cannot be enforced against a canal boat for supplies furnished, as stated in the notice filed, to such vessel and another, "coupled together as a double-header, and run, managed, and navigated by one captain and crew, together, as one boat," without distinguishing the goods supplied to each.

In Admiralty. Suit to enforce lien for supplies furnished.

Martin A. Ryan, for libelant.

Carpenter & Park and J. K. Symmers, for claimant.

THOMAS, District Judge. One Castle owned the canal boat Hiram W. Eads, and another person, unknown, owned the canal boat Harris. The libelant sold and delivered to Castle goods as follows: October 3 and 11, 1899, $69.79; lien filed October 26, 1899. May 5, 1900, $42.97; lien filed June 4, 1900. August 29, 1900, $30.73; lien filed September 18, 1900. The evidence tends to show that at these dates the boats were on the Erie Canal, "coupled together as a double-header, and run, managed, and navigated by one captain and crew, as one boat"; the captain and his family living on one boat, the Eads, and the six horses and mules stabled at times on both boats, but during actual navigation on the Harris. The goods consisted largely of feed for the animals, and, to some extent, of supplies for the crew. The goods were delivered on the boats, but in what proportion, kind, or amount to each, does not appear, and were consumed in the course of the undertaking to which the boats were jointly appropriated. It is fairly inferable that Castle promised the vendor that he should have a lien for the price of the goods, although the matter was not specifically mentioned at the time of the last purchase. The liens were duly filed against both vessels, "coupled together as a double-header, and run, managed, and navigated by one captain and crew, together, as one boat." The Eads was purchased by claimant at a foreclosure sale of a mortgage on September 21, 1900. The libel was filed May 27, 1901. The statute (1 Laws N. Y. 1897, c. 418, art. 2) provides that the debt contracted for certain materials or articles furnished to a vessel shall be a lien thereon, but "shall cease to be a lien upon such vessel unless the lienor shall, within thirty days after it is contracted, file a notice of lien, containing the name of the vessel, the name of the owner, if known, the particulars of the debt, and a statement of the amount claimed to be due from such vessel." In the present case the two vessels are regarded as one, and the lien is sought to be imposed

¶ 1. Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.

indivisibly upon one entity, embodying the two vessels. The libelant relies upon The Alabama (C. C.) 22 Fed. 449; The Murphy Tugs (D. C.) 28 Fed. 429; The Merrimac (D. C.) 29 Fed. 157; McRae v. Dredging Co. (C. C.) 86 Fed. 345. In The Alabama the plant consisted of a dredge and scows, and some doubt was entertained whether the dredgeboat, by itself, was a vessel. The learned judge inclined to the opinion that it was, but did not doubt that the lien could attach to the plant composed of the dredge and scows, because they were built and operated together for a work that could not be done if one of them were absent. The decision is noticed in The Columbus (D. C.) 65 Fed. 430. In The Murphy Tugs, Judge Brown decided that a diver, contracting for services upon any of several tugs belonging to the same company to which he should be ordered, for a per diem compensation, was entitled to a maritime lien upon each of such tugs for the time he was actually engaged thereon. The tugs were completely segregated for the purposes of the decision, and there is no community of obligation or lien suggested. The only feature common to all the tugs was the general contract of hiring. McRae v. Dredging Co. involved a maritime lien for materials and work furnished and done on dredging vessels engaged in a common enterprise. The opinion states:

"It is true that some of the men worked upon and in connection with both vessels, and the law does not admit of a lien upon one vessel for wages earned in service upon a different vessel; but the evidence shows with approximate accuracy the time which each man devoted to the service of each vessel, and the amounts can be fairly apportioned."

In The Merrimac it was held that a seineboat accompanying a fishing schooner was appurtenant to the latter so long as the ownership was common, but not after the severance of ownership, although the seineboat was used by the schooner under a contract of hiring. In The Knickerbocker (D. C.) 83 Fed. 843, Judge Benedict denied a lien under the statute of New York for supplies alleged to have been bought for a fleet consisting of a dredge, tugs, scows, water boats, etc., composing one plant, and used on some of the vessels, but not on others. The opinion states:

"The statute of the state of New York creates a lien upon a vessel for provisions supplied to such vessel, and not otherwise. It is impossible to say from the evidence here what part of the supplies in question, or whether any of them, was used to provision any particular vessel. The evidence will not permit holding that the vessels proceeded against were so employed as to constitute, in law, a single vessel; but, if such a case be possible, the statute of the state makes no provision for a lien upon several vessels so employed. The testimony fails to designate the vessel which was supplied with provisions furnished by the libelant. Doubtless the provisions were used to supply the needs of men employed on some of the vessels proceeded against, but which of the vessels was supplied by the libelant does not appear."

In The Columbus (D. C.) 65 Fed. 430, it was held that the libelant had no joint maritime lien on several scows and dredges for services of tugs in towing the scows for the purposes of discharging the material raised by the dredge, and for moving the dredges from place to place as the work progressed, although the plant was an entirety. In The Newport, 52 C. C. A. 415, 114 Fed. 713, the Circuit Court of Appeals for the Second Circuit decided that, although the services

were rendered on the credit of the vessels, a joint lien against a dredge, and scows used in connection therewith, for services rendered to all the vessels under a common contract, could not be enforced. The libelant in the case at bar could not have enforced a maritime lien under the evidence adduced, as he furnished the supplies on the credit of two vessels, without distinguishing the goods supplied and credit afforded to each. He cannot enforce a lien under the statute, because the statute has not been followed. It makes a vessel a debtor, provided the amount claimed against the vessel be stated in the notice of lien filed. Here a general debt against two vessels conjoined is stated, without any effort to charge either with its just share. Even if the libelant could now point out the amount due from each, he has not done so in his notice of lien, and, as a result, he has no lien to support his action. The time for him to distribute the indebtedness to the several vessels was when he sought to charge such indebtedness to the several vessels. He cannot state a gross sum against both vessels, and await the trial for the purpose of determining what each vessel should bear.

The libel filed alone against the boat the Warner Miller Company, formerly the Hiram W. Eads, to enforce the lien sought to be perfected against two vessels, must be dismissed.