### FREDERICKS v. JAMES REES & SONS CO.

### THE NORTHERN.

(Circuit Court of Appeals, Third Circuit. January 16, 1905.)

No. 46.

1. MARITIME LIENS—LIENS GIVEN BY STATE STATUTE—JURISDICTION IN ADMIRALTY TO ENFORCE.

A lien to be enforced by proceeding in rem, given by a statute of a state for repairs or supplies furnished to a vessel in her home port, is in the nature of a maritime lien, and may be enforced in admiralty in the District Courts of the United States, and the jurisdiction of such courts is exclusive.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, §§ 191–205; vol. 34, Cent. Dig. Maritime Liens, § 21.

Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

2. SAME—PENNSYLVANIA STATUTE—DREDGE BOAT.

Pennsylvania Act 1858 (P. L. 363), which gives a lien for repairs or supplies furnished on "all ships, steamboats or vessels navigating the rivers Allegheny, Monongahela or Ohio in this state," embraces only such vessels as are engaged in the business of trade or commerce on such rivers, and does not apply to a dredge boat without motive power, and used only for supporting and moving from place to place dredging apparatus.

Appeal from the District Court of the United States for the Western District of Pennsylvania, in Admiralty.

L. C. Barton, for appellant.

Albert York Smith, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the District Court of the United States for the Western District of Pennsylvania, sitting in admiralty. In June, 1903, a libel was filed by the appellees in said court, against the dredge boat or vessel called the Northern, in a cause of contract alleged to be civil and maritime. The libel set forth that sometime in the month of June, 1901, and at divers other times set forth in the bill of particulars, the libelants furnished stores, supplies, materials and fuel, and work and labor, for the repairing, equipping and navigating said vessel; that said stores and work and labor were furnished and performed upon the order of the ship's hus-

band, and upon the credit of said vessel and owners at the port of Pittsburg. To enforce the lien alleged to rest upon the said boat by reason of the premises, the libelant prayed for process in due form, according to the course of admiralty and maritime jurisdiction administered by said court. The said dredge boat was, in due course, arrested and afterwards released upon the usual stipulation of the claimant and his surety. After hearing, on libel, answer and proofs, judgment was entered by the court in favor of the libelant and against the said claimant and his surety. The libel states that the value of the repairs and supplies furnished by libelant was and is by the maritime law and by the laws of the state of Pennsylvania, a lien upon said vessel, etc. It is properly assumed, however, by the libelant in argument, and by the court below, that no lien exists in this case by the general maritime law, and that the jurisdiction of the District Court, in admiralty, must depend upon a maritime lien created by the law of the state of Pennsylvania.

In the administration of admiralty and maritime law by the United States courts, it has long been well settled that, for repairs or supplies in the home port of the vessel, no lien exists or can be enforced in admiralty under the general law. It is equally well settled that, where the statute of a state gives a lien to be enforced by a process in rem, for repairs or supplies to a vessel in her home port, this lien being similar to a lien arising against a vessel in a foreign port, under the general maritime law, is in the nature of a maritime lien, and therefore may be enforced in admiralty in the District Courts of the United States, and that the jurisdiction of such courts, sitting in admiralty, is exclusive. Anomalous as it may seem, the states may create liens which they cannot enforce, but which may be recognized by the courts of the United States sitting in admiralty. The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296; The General Smith, 4 Wheat. 438, 4 L. Ed. 609; The Planter, 7 Pet. 324, 8 L. Ed. 700; The St. Lawrence, 1 Black, 522, 17 L. Ed. 180; The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397; The Lottawanna, 21 Wall. 558, 22 L. Ed. 654.

It is claimed by the libelant in this case, that the lien for the supplies furnished the dredge boat Northern, as claimed in the libel, existed by virtue of a statute of the state of Pennsylvania, passed in 1858 (P. L. 363). It was therein enacted:

"That all ships, steamboats or vessels navigating the rivers Allegheny, Monongahela or Ohio, in this state, shall be liable and subject to a lien in the following cases: * * * II. For all debts contracted by the owner or owners, agent, consignee, master, clerk or clerks, of such ships, steam or other boats or vesssels, * * * for and on account of work and labor done and materials furnished * * * in the building, repairing, fitting, furnishing or equipping such ships, steam or other boats or vessels."

Assuming that the dredge boat Northern was a ship, boat, or vessel, within the meaning of the general admiralty and maritime law, she was in her home port, and no lien for the value of said supplies existed under the general maritime law. The statute of the state of Pennsylvania, just referred to, did, however, unquestionably create a lien against certain ships, boats, or vessels, for the value of supplies furnished in their home ports, which, being a maritime lien, is enforceable

exclusively in the admiralty courts of the United States. It is obvious, however, that the maritime lien thus enforceable must be strictly the one created by the state statute, and subject to just such limitations as are imposed thereby. The statute is special and local, and the ships, steamboats, or vessels subjected to a lien are only those "navigating" the said rivers. It would seem clear that the dredge boat here libeled did not navigate the rivers named, or any others. It was a structure floating upon the water, supporting and entirely occupied by apparatus and machinery for digging out the bottom of a river, dock, or harbor. It was not in any respect constructed for holding or carrying freight or passengers. It is true, it floated upon the water, but was only intended to be moved the short distances necessary in the work of dredging, or when towed from one scene of operation to another. It certainly was not engaged in navigating the rivers mentioned. No ordinary or proper meaning, that could be attached to the word "navigating," is applicable to any movement required of such a structure. Nor is this dredge boat entirely apart from the question, whether it is the subject of a maritime lien, fairly within the category made by the act, of a ship, steamboat or vessel, much less of one "navigating"; i. e. engaged in the business of navigating the named rivers. If it were necessary, the word "vessels," in the act, as being the one most widely descriptive, must be limited in its meaning by its collocation with the words "ships" and "steamboats," according to the well-settled rule of ejusdem generis. The ships, steamboats, or vessels referred to, are clearly those intended for the purpose of or actually engaged in the business of navigating the named rivers; that is, in the business of moving on the waters thereof from place to place, whether for the purpose of carrying persons or commodities, or both. This obvious meaning of the words used in the act, excludes a dredge boat, neither intended nor used for the business of moving persons or commodities from place to place on the waters of said rivers. Whatever extension of meaning may be given the words "ship, steamboat or vessel," used alone, the word "navigating" imports a clearly defined limitation which cannot be disregarded; and dredge boats, floating pile drivers, and floating elevators are excluded from the purview of the act, though scows and barges, intended to be towed from place to place for the carriage of passengers or commodities, would be included.

In the case of The City of Pittsburgh (D. C.) 45 Fed. 699, it was well decided by Judge Reed, of this same District Court, in construing this statute of Pennsylvania, that an old steamboat, from which the boilers, wheels, engines and machinery had been removed, and which was then used as a pleasure barge, having no independent means of propulsion, but intended to be towed by a towboat, in the transportation of excursion parties on these rivers, was a vessel navigating the same, within the language of the act, and as such subject to a lien for materials furnished and work done in fitting and repairing her. In deciding that this barge was included among the vessels upon which a lien is given by the act, for work and materials used in repair, the learned judge refers to two Pennsylvania cases, viz., The Fashion, 3 Grant, Cas. 40, and Parkinson v. Manny, 2 Grant, Cas. 521. In the former, it was held that a canal boat was a "vessel," within the meaning of the

act, and in the latter, that a coal boat was not such a "ship or vessel" as to be within the meaning of the act of 1836 (P. L. 617),—an act similar in its purpose to the act of 1858, which provided that:

"Ships and vessels of all kinds, built, repaired, or fitted within the commonwealth, shall be subject to a lien for all debts contracted by the masters or owners thereof, for work done or materials found or provided in the building, repairing, fitting, furnishing or equipping of the same."

The court in this case said:

"That vessels of a permanent and substantial character, such as make repeated voyages, either at sea or upon our rivers and canals, are contemplated by the act, and not such as are merely temporary."

The remaining question, whether the barge was such a "vessel," under the maritime law, as a court of admiralty will take jurisdiction of, for the enforcement and collection of the lien created by the state statute, was, of course, decided in the affirmative; but in the case at bar, as well as in that case, the determination of this question is unavailing, unless the words of the statute apply to the particular vessel before the court. Therefore, even if we could agree with the reasoning of the learned judge in the case of The Pioneer (D. C.) 30 Fed. 206, that a dredge boat was a "vessel," within the meaning of the general maritime law, and as such subject to a maritime lien for supplies, it would not follow that such a boat was within the class referred to by the Pennsylvania act here in question. So, in the case of The Alabama (C. C.) 22 Fed. 450, referred to by the learned judge of the court below, in his opinion in the case of the steam dredge boat Eastern, No. 2, the question was not as to what kind of boats or floating structures were included in the description of a state statute creating a lien upon them, but whether, under the general maritime law, a dredge boat and scows, taken together as one craft, constituted a "vessel," to which a maritime lien would attach.

We do not, however, consider the question, whether such boats as the Northern in this case, are to be held "vessels," and subjects of maritime lien under the general admiralty law as settled, notwithstanding the decisions in the case of The Pioneer, supra, and of The Hezekiah Baldwin, 8 Ben. 556, Fed. Cas. No. 6,449, where a floating elevator was held to be a vessel and a subject of maritime lien. In the case of Cope v. Dry-Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501, where the question was whether a floating dry dock could be subjected to a proceeding in rem for a salvage service, Mr. Justice Bradley, delivering the opinion of the court, says:

"It is true that the terms 'ships' and 'vessels' are used in a very broad sense, to include all navigable structures intended for transportation."

Then citing a case decided by the Court of Appeal in England, which held that the word "ship" would include a hopper barge used for receiving mud from a dredging machine, and carrying it out to deep water, he adds:

"Perhaps this case goes as far as any case has gone in extending the meaning of the term 'ship' or 'vessel.' Still, the hopper barge was a navigable structure, used for the purpose of transportation."

The District Court for the Eastern District of Michigan, in the case of The General Cass, reported by District Judge Brown (now Mr. Justice Brown of the Supreme Court), Brown's Admiralty, 334, held that the admiralty jurisdiction extended to lighters employed in carrying lumber out to vessels lying in deep water. In an interesting discussion of the question of jurisdiction depending upon the character of the vessel, the court says:

"The true criterion by which to determine whether any water craft, or vessel, is subject to admiralty jurisdiction, is the business or employment for which it is intended, or is susceptible of being used, or in which it is actually engaged. * * * If the business or employment of vessels appertain to travel, or trade and commerce, on public navigable water, it is sufficient, and the jurisdiction attaches."

However this may be, as a question of admiralty jurisdiction, we are clear that the Pennsylvania statute referred to applies only to vessels engaged in the business or employment of trade or commerce on the rivers named therein. The view here taken of the question of jurisdiction under the Pennsylvania statute, renders it unnecessary to consider the other defense, as to whether the suit was commenced within the time prescribed by law.

Therefore, for the reasons stated, the decree of the court below is reversed.