## PILE DRIVER E. O. A.

### MUELLERWEISSE et al. v. PILE DRIVER E. O. A.

(District Court, E. D. Michigan. November 7, 1894.)

1. ADMIRALTY JURISDICTION—STATE STATUTES.

A federal court sitting in admiralty cannot enforce a lien given by a state statute upon a floating structure, unless the same is of such a character as to be a subject of admiralty jurisdiction.

2. SAME—SUBJECTS OF ADMIRALTY JURISDICTION—FLOATING PILE DRIVER.

A pile driver consisting of a floating platform, carrying a derrick, engine, and pile-driving apparatus, and also furnished with a wheel by which it may propel itself about the bay or harbor, from one place of work to another, and which in its present condition is not fitted for purposes of transportation, is not a subject of admiralty jurisdiction; and contracts to furnish it with supplies are not maritime contracts enforceable in the admiralty.

In Admiralty.

This was a libel against the pile driver E. O. A. to enforce an alleged lien for supplies.

Moores & Goff, for libelants.

J. W. Finney, for claimants.

SWAN, District Judge. The libel in this cause was filed to recover for supplies furnished at Alpena, Mich., to the pile driver E. O. A., during each month of 1890, beginning with March, and during the months of January, February, and March, 1891. The amount claimed is $431.48, with interest. The libel alleges "that, at the several times therein mentioned, said vessel was a vessel of five tons burden and upward, and used for commerce and navigation, and thence hitherto had been and is as to said libelants a vessel owned wholly by persons residing in the state of Michigan"; that the supplies were furnished at Alpena at the request of the master of the E. O. A., and on his representation that "the said vessel stood in need of the supplies, * * * in order to render her seaworthy and competent to proceed on her intended voyages and trips"; and "that, by the laws of the state of Michigan, libelants have a lien on said vessel for said materials and supplies." The answer denies the jurisdiction of the court, and avers that the pile driver is a vessel of five tons burden and upward, as alleged in said libel, but denies that said pile driver is competent to perform any voyages or trips of a nature to subject the craft to the admiralty and maritime jurisdiction of this court, and denies that the pile driver had any master during the times mentioned in the libel. It further pleads that the pile driver is a platform or a float upon which is erected the ordinary derrick and appliances for the use of a pile-driving hammer, and a small stationary engine to run said hammer; that said float and appliances are not used in commerce and navigation, but are used simply for the purpose of driving piles about the docks in the harbor of Alpena and in Alpena river; and that the person in charge of the pile driver, with his family, has lived thereon during the time in said libel mentioned; and, upon information and belief, charges that all the supplies were furnished for the use of the person in charge of said pile driver and his family, upon his individual credit, and largely during the winter months, while navigation was closed. The further defenses set up in the answer are not necessary to be considered in the view taken of the case.

The character and uses of the E. O. A. are substantially as set forth in the answer. She was also equipped with a rudder and steering wheel in addition to the appliances used for the business of pile driving and dock building. It is also established that the person in charge of and who operated the hammer lived on board the E. O. A. with his family; and the schedule attached to the libel shows that the supplies for which this lien is claimed consist wholly of provisions and articles necessary to housekeeping. This scow or floating platform upon which the pile driver was erected was about 60 feet long, 20 feet beam, and 2½ feet deep, and, so far as its carrying capacity was con-

cerned, was therefore of upward of five tons burden. The E. O. A. was not enrolled or licensed. The engine and boiler, the main use of which was to operate the pile hammer, were never inspected, nor was the man in charge of the craft, whose duty it was to operate the hammer, ever licensed as a master, nor did he profess to be a seaman. The only crew ever carried by this platform were Knight, who claimed to be the owner and operator of the pile driver; his wife, who did the cooking; his son, a young man who had not attained his majority; and, when necessary, another workman, who assisted in the operation of the hammer. In the performance of the work for which this structure was intended and for which it was engaged during all the times mentioned in the libel, the craft was propelled by a stern wheel connected by a beveled gear with a portable engine, the main use of which was to operate the hammer; and, to save expense of towing, the engine was used, when thus connected with the stern wheel, to move the platform from point to point in Alpena bay or Alpena river, wherever docks were to be built or piles driven. It also appears that four or five years before the supplies, or any part of them, were furnished, the scow or platform on which the pile driver was erected had been used on two occasions to transport gravel and cedar ties. For that purpose the pile-driver apparatus was removed from the platform and put ashore; and that in the winter, when ice prevented the movement of the scow, the apparatus, when required for use, was taken off the scow, and operated upon the ice or on the shore, as occasion required.

Upon the foregoing state of facts, the only inquiry is whether or not a court of admiralty has jurisdiction to enforce the contract pleaded in the libel. It is true that the libelants claim to have a lien for the supplies furnished under and by virtue of the water-craft law of the state of Michigan (2 How. Ann. St. c. 285); but, inasmuch as the true limits of admiralty jurisdiction must determine libelants' right of recovery, and as no state law or act of congress can make that jurisdiction broader or narrower than the judicial power may determine its limits to be (The Lottawana, 21 Wall. 576), it follows that, unless the structure proceeded against is the subject of admiralty jurisdiction, the fact, if it be a fact, that the state law confers a lien upon it for supplies and materials, is immaterial.

While it is probably true that this pile driver might be capable of a tort upon navigable waters, in this cause the jurisdiction is dependent upon the nature of the contract. "In actions of contract the agreement sued upon must be maritime in its character. It must pertain in some way to the navigation of a vessel, having carrying capacity, and employed as an instrument of travel, trade, or commerce, although its form and means of propulsion are immaterial." A Raft of Cypress Logs, 1 Flip. 543, Fed. Cas. No. 11,527; The General Cass, 1 Brown, Adm. 334, Fed. Cas. No. 5,307. The fact that a structure floated on the water does not make it a ship or a vessel. Cope v. Dry-Dock Co., 119 U. S. 627, 7 Sup. Ct. 336; The Pulaski, 33 Fed. 383; The Hendrick Hudson, 3 Ben. 419, Fed. Cas. No. 6,355.

In the last case it is said:

"The fact that the structure has the shape of a vessel, or has been once used as a vessel, or could by proper appliances be again used as such, cannot affect the question. The test is the actual status of the structure as being fairly engaged in commerce or navigation."

It is true that the E. O. A. had carrying capacity, and was of more than 20 tons burden; but the fact remains that her only use and employment during all the time mentioned in the libel was not in commerce and navigation. The two exceptional occasions, on one of which she carried a quantity of sand, and on another a few cedar poles, by removing for that purpose the apparatus for pile driving, were her only ventures in transportation. Since then her sole employment has been the driving of piles and building of docks. The transportation of the hammer, and, for its operation, of the portable engine, and their support and floatage while in use, were the sole functions of this scow or platform. When ice prevented the use of the scow, it also took its place as the base of operations of the pile driver, when the scow's only use was to furnish lodging and dining facilities for the operator of the hammer and his family. The engine propelled the structure to the place of its labors, and was then used to operate the pile driver.

Much stress is laid upon the relation of wharves and docks to commerce as justifying the claim made by the libelants, and in support of the contention that the use of the pile driver was within the definition of commerce and navigation as generally understood. But this position is untenable. While docks and wharves are indispensable to the conduct of commerce, yet other industries have a still closer relation to commerce, and yet are clearly outside the pale of admiralty cognizance. The same argument that would sustain the jurisdiction of a claim against the machinery for building a dock because a dock is an inseparable adjunct of commerce would compel the recognition of the claim of the lumberman or the foundryman who furnishes the materials for the construction of a vessel, of the shipwright who builds her, and of the machinist and boiler makers who supply her engines and boilers. But these are claims enforceable only in the common-law courts, or under special statutes of the several states. Edwards v. Elliott, 21 Wall. 553; The Jefferson, 20 How. 393; Roach v. Chapman, 22 How. 129. I have not overlooked the case of The Hezekiah Baldwin, 8 Ben. 556, Fed. Cas. No. 6,449, in which the vessel proceeded against was employed in the transfer, by the elevator which she carried, of cargoes from one vessel to another. The jurisdiction is maintained on the same principle that controls in the recognition of the services of the stevedore and the use of a lighter as an aid to commerce and navigation. In The Alabama, 19 Fed. 544, affirmed on appeal in 22 Fed. 449, the scows used for the carriage of the mud excavated by the dredge in connection with which they were employed were engaged in an obviously maritime service, and were none the less vehicles of commerce because the article they transported was not a merchantable commodity, but simply material of no value.

Their service was purely maritime transportation. The case of The Pioneer, 30 Fed. 206, which sustains a lien upon a dredge because it was capable of use in navigation without its machinery, although its only use was to transport the shovel and machinery with which it was equipped, is irreconcilable with the cases of The Hendrick Hudson, 3 Ben. 419, Fed. Cas. No. 6,355; The Pulaski, 33 Fed. 383; Ruddiman v. A Scow Platform, 38 Fed. 158; The Big Jim, 61 Fed. 503.

For the reasons stated, the E. O. A. is not the subject of admiralty jurisdiction, and the contract for the supplies in the libel claimed to have been furnished is not a matter of admiralty cognizance. The libel must therefore be dismissed; and as the want of jurisdiction does not appear upon its face, but was raised by the answer and shown by the proofs, the claimants are entitled to their costs. Lowe v. The Benjamin, 1 Wall. Jr. 187, Fed. Cas. No. 8,565.