## GROSSETT v. TOWNSEND.

(Circuit Court of Appeals, Ninth Circuit.   February 14, 1898.)

No. 389.

SEAMAN—SHIPPING ARTICLES—ALLOTMENT OF WAGES.

Act June 19, 1886, § 3, permitting a seaman to stipulate in his shipping agreement before a shipping commissioner for an allotment of wages to a creditor, was by implication repealed by Act Feb. 18, 1895, providing that the shipping agreement made before a shipping commissioner for a coastwise voyage shall not include the clause relating to an allotment of wages, and where such an allotment is made it is invalid, and money paid under it cannot be deducted from the seaman's wages.

Appeal from the District Court of the United States for the Northern District of California.

H. W. Hutton, for appellant.

George W. Towle, Jr., for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge.   On May 24, 1896, the libelant shipped as a seaman on the American bark J. D. Peters, at Port Townsend, in the state of Washington, for a voyage to Alaskan ports and to return to San Francisco.   He signed the shipping articles before a United States shipping commissioner.   The voyage was estimated to consume four months.   It began May 24, 1896, and ended September 20, 1896.   At the time of signing the articles it was represented to the master of the vessel and to the shipping commissioner that the libelant was indebted in the sum of $25 to one Max Levy for board and clothing at Port Townsend.   To secure the payment of that debt, the libelant made an allotment from his wages to be earned of $10 per month for the first two months of the voyage and $5 for the third month, and signed an allotment note of $25 therefor.   The note was paid by the agents of the vessel at Port Townsend.   On the completion of the voyage it was claimed that the allotment note was invalid, and that the $25 was unlawfully deducted from the libelant's wages by the master of the vessel.   This suit was brought to determine the question of the legality of the allotment, and the principal question presented on the appeal is whether a seaman engaged in a coastwise voyage may make an allotment to the extent of $10 per month of his wages to be earned on the voyage.   In order to understand the scope and purpose of the more recent legislation upon this subject, it is necessary to refer to the earlier statutes.   The act of congress of June 7, 1872 (17 Stat. 262), entitled "An act to authorize the appointment of shipping commissioners, by the several circuit courts of the United States, to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen," provides, in section 12: "That the master of every ship bound from a port in the United States to any foreign port, or of any ship of the burden of seventy-five tons or upwards bound from a port on the Atlantic to a port on the Pacific, or vice versa,

shall, before he proceeds on such voyage, make an agreement in writing or in print with every seaman whom he carries to sea as one of the crew, in the manner hereinafter mentioned." Then follows an enumeration of the items which must be contained in the agreement, the last of which is: "Eighthly. Any stipulations in reference to advance and allotment of wages or other matters not contrary to law." The section concludes with the proviso that section 12 "shall not apply to masters of vessels where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage, nor to masters of coastwise nor to masters of lake-going vessels that touch at foreign ports." By section 13 it is provided that the agreement must be signed by each seaman in the presence of the shipping commissioner, who shall certify the same. Sections 16 and 17 provide as follows:

"Sec. 16. That all stipulations for the allotment of any part of the wages of a seaman during his absence which are made at the commencement of the voyage shall be inserted in the agreement and shall state the amounts and times of the payments to be made and the persons to whom such payments are to be made.

"Sec. 17. That no advance of wages shall be made or advance security be given to any person but to the seaman himself or to his wife or mother, and no advance of wages shall be made or advance security given unless the agreement contains a stipulation for the same and an accurate statement of the amount thereof; and no advance wages or advance security shall be given to any seaman except in the presence of the shipping commissioner."

By the act of January 15, 1873, congress amended section 12 of the former act, and provided that that section should not apply to masters of vessels when engaged in trade between the United States and the British North American possessions, or the West India Islands, or the republic of Mexico. By the act of June 9, 1874, it was enacted that none of the provisions of the act of June 7, 1872, "shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake going trade, touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are, by custom or agreement, entitled to participate in the profits or results of a cruise or voyage." It will be seen that the act of 1874 effectually modified the prior legislation concerning shipping commissioners, and excluded from its operation vessels in the coastwise trade, with the exception named. In other words, in the shipping of seamen for coastwise voyages other than those between the Atlantic and Pacific coasts, the agreements of masters with the seamen were not thereafter required to be signed under the superintendence of a shipping commissioner, it being the purpose of the amendatory act to leave masters at liberty to obtain and make contracts with seamen for voyages upon such terms as to advance or allotment of wages or otherwise as might be agreed upon, as to all voyages in the coastwise trade, with the exception named. So stood the law until the act of congress of June 26, 1884 (23 Stat. 55), entitled "An act to remove certain burdens on the American merchant marine," etc., which prohibited any advance of wages whatever, and any allotment except to a wife, mother, or other relative, by stipulation in the shipping agreement. This provision, by its terms, applied to sea-

men on all vessels except whaling vessels. The act of June 19, 1886, § 3 (24 Stat. 80), after providing, in section 2, "that shipping commissioners may ship and discharge crews for any vessel engaged in the coastwise trade," etc., amended section 10 of the act of 1884 by striking out the portion relating to wife, mother, or other relative, and provided that a seaman "might stipulate in his shipping agreement for an allotment to his wife, mother or other relative, or to an original creditor in liquidation of any just debt for board or clothing, which he may have contracted prior to the engagement, not exceeding $10.00 per month for each month of the time usually required for the voyage for which the seaman has shipped, under such regulations as the secretary of the treasury may prescribe." It will thus be seen that from and after the date of the amendment of 1886 all seamen shipped at American ports, for any voyage, were given the power to contract, but only by a written stipulation in their shipping agreements for an allotment of wages to the limited amount of $10 per month for each month of the time usually required for the voyage, and no more, and only as an allotment to wife, mother, or other relative, or to an original creditor to pay a just board or clothing debt already contracted; and, further, that it was permitted, but not required, that crews for coastwise voyages be shipped before a shipping commissioner. On August 19, 1890 (26 Stat. 320), "An act to amend the laws relative to shipping commissioners" was passed, providing "that when a crew is shipped by a shipping commissioner for any American vessel in the coastwise trade," etc., "as authorized by section 2 of an act approved June 19, 1886, * * * an agreement shall be made with each seaman engaged as one of such crew in the same manner and form as is provided by sections forty-five hundred and eleven (section 12 of the act of 1872) and forty-five hundred and twelve of the Revised Statutes." On February 18, 1895 (28 Stat. 667), an act was passed to amend the act of August 19, 1890. It declares that when a crew is shipped by a shipping commissioner for any American vessel in the coastwise trade, as authorized by section 2 of the act of 1886, "an agreement shall be made with each seaman engaged as one of such crew, in the same manner as is provided by sections four thousand five hundred and eleven and four thousand five hundred and twelve of the Revised Statutes, not however including the sixth, seventh and eighth items of section four thousand five hundred and eleven. [Then follows a provision applying sections 4519, 4526–4530, 4535, 4536, and 4542–4547 to the agreement.] * * * But in all other respects such shipment of seamen shall be regarded as if both shipment and agreement had been entered into between the master of a vessel and a seaman without going before a shipping commissioner." The sixth, seventh, and eighth items so excluded from the agreement are the following:

"Sixth. A scale of the provisions which are to be furnished to each seaman. Seventh. Any regulations as to conduct on board, and as to fines, short allowance of provisions, or other lawful punishments for misconduct, which may be sanctioned by congress as proper to be adopted, and which the parties agree to adopt. Eighth. Any stipulations in reference to advance and allotment of wages, or other matters not contrary to law."

Does the act of 1895, by enacting that, in cases of shipment before a shipping commissioner for a coastwise voyage, the shipping agreement shall not include the eighth item of the schedule, which was theretofore an essential feature in the agreement in cases where there was to be an allotment, by implication repeal the authority which had been conferred to make allotment of wages to be earned in coastwise voyages; or was it the intention only to prescribe what should be the form of the written contract in cases of shipment for coastwise voyages, and to say that the last three items of the schedule need not be inserted, and that as to those items the contracting parties were free to make such agreement, verbally or otherwise, as they might choose to make? The law of 1884, as amended in 1886, declared that all allotments should be unlawful unless contracted for by a written stipulation inserted in the shipping agreement. The law of 1895 does not expressly repeal any of the provisions of the prior laws. In declaring that in shipping before a shipping commissioner for a coastwise voyage the agreement shall not include a stipulation for allotment, we think it was the intention to deprive the parties in such a case of the power of contracting for allotment. When a law declares that an allotment may be made only by written agreement, and subsequently it is enacted that in certain cases the contract of shipment shall not contain that stipulation, it seems clear that as to those cases the later law was intended to take away the power conferred by the former. It is urged against this construction that force and effect cannot be given to that clause of the act of 1895 which provides that "in all other respects such shipment of seamen and such shipping agreement shall be regarded as if both shipment and agreement had been entered into between the master of a vessel and a seaman without going before a shipping commissioner," unless it is held that it was the intention to leave the seamen free to make such contracts as might be agreed upon between them and the masters concerning allotments, and that the "other respects" so referred to can be no other than the three items which it is declared shall not be included in the contract. To determine whether such was the intention of this provision, it is proper to refer to the provisions of the existing law which are therein made a criterion, viz. the law controlling agreements between masters and seamen in cases where the latter are shipped without going before a shipping commissioner. That law, as we have seen, absolutely prohibited any allotment, except by a written stipulation. While the contract of shipment of seamen for a coastwise voyage was permitted to be made without going before a shipping commissioner, it was nevertheless necessary that all contracts of allotment should be in writing, otherwise they could not be made. The last clause of the law of 1895 is directly preceded by provisions which declare that certain specified sections of the Revised Statutes are applicable to cases of shipment for coastwise voyages before a shipping commissioner, omitting others which are not deemed applicable. It is reasonable to infer that the last clause, so far as "other respects" are concerned, has reference to provisions of the Revised Statutes which are so omitted, and which do not pertain to allotment, and that as to those matters in shipping for a coastwise voyage it was

the intention of the statute to leave parties free to contract as if they had not gone before a shipping commissioner. But if it is conceded that the "other respects" referred to include the subject of allotment, it still does not aid the contention of the appellee. The contracts authorized to be made without the intervention of the shipping commissioner were nevertheless subject to the prohibition against allotment unless made by a written stipulation in the shipping agreement. To say that in respect to allotment the contracts should be as if made without going before a shipping commissioner, was to say that allotment could only be made in the manner authorized by the law applicable to such shipment, and the logic of the appellee's contention leads to the conclusion that the present state of the law is this: First, the contract of shipment shall contain no provision concerning allotment; second, there shall be no allotment except by a written stipulation in the contract. It is urged against the construction which we place upon the statute that it leads to the incongruous result that seamen shipped without going before a shipping commissioner have leave to contract by written agreement for an allotment of wages, not to exceed $10 per month, for a coastwise voyage, while those who are shipped before a shipping commissioner are deprived of that power. It is true that the inequality of the law as thus stated would present a strong argument against the construction which we have adopted, were it not that the construction contended for by the appellee leads to a result equally incongruous. Upon the construction which he contends for it would follow that seamen shipped before a shipping commissioner might make any contract which they saw fit to make in regard to allotment, without the safeguard and protection of a written agreement, while those otherwise shipped could only contract for allotment in the prescribed manner, in the limited amount, and for the specified persons named in the act of 1886. The conclusion at which we arrive is in harmony with the purpose of the legislation upon this subject. The statutes prohibiting allotment are directed against evils which have often been alluded to in the decisions of admiralty courts. The intention has been to protect the sailor against imposition and fraud. It was evidently believed by congress that for a coastwise voyage of brief duration there was no necessity for an allotment for the wife, mother, or creditor of the sailor. This was the construction placed upon the law by the officers of the treasury department at the time when it went into effect. In a case of doubt as to the meaning of a statute, it is proper to consider the contemporary construction placed upon it by those upon whom the duty is imposed of enforcing its provisions. Schell's Ex'rs v. Fauché, 138 U. S. 562, 11 Sup. Ct. 376; Hahn v. U. S., 107 U. S. 402, 2 Sup. Ct. 494; U. S. v. Pugh, 99 U. S. 265; Peabody v. Stark, 16 Wall. 240; Edwards' Lessee v. Darby, 12 Wheat. 206. The decree will be reversed, and the cause remanded to the district court for further proceedings not inconsistent with the views expressed in this opinion.