HERNAN v. AMERICAN BRIDGE CO.

(Circuit Court of Appeals, Sixth Circuit. January 9, 1909.)

No. 1,826.

1. APPEAL AND ERROR (§ 959*)—REVIEW—DECISIONS RELATING TO PLEADINGS.
    The granting or refusing leave to amend pleadings is ordinarily a matter of discretion, not reviewable on appeal or error in the federal courts; but where it is shown that the court refused to exercise its discretion because of supposed lack of authority, the ruling is reviewable for error.
    [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 959.*]

2. PARTIES (§ 95*)—POWER TO PERMIT AMENDMENTS—MISDESCRIPTION OF DE-
FENDANT.

    Plaintiff brought an action in a federal court in Ohio against a bridge
company to recover for a personal injury alleged to have been received by
him while working as an employé of the company at its plant at a place
named. The summons was served on an agent of the company designat-
ed by it for that purpose under the statute of Ohio. The summons did
not designate the citizenship of the defendant, but the petition described
it as a corporation of New York. An answer was filed admitting that
defendant was a corporation of New York and containing a general denial
of all other allegations of the petition. Subsequently a motion for more
specific statement was made and sustained, and later, after a new action
was barred by limitation, an amended answer was filed denying that de-
fendant ever employed plaintiff or that it operated the plant referred to
in the petition. In fact, there was a corporation of New York and one of
New Jersey, having the same name and the same agent in Ohio, the latter
being plaintiff's employer and the one intended to be sued. *Held*, that the
New Jersey corporation was in fact the defendant, as the petition dis-
closed, and that, service having been properly made on its agent, the court
had power under Rev. St. §§ 948, 951 (U. S. Comp. St. 1901, pp. 695, 696),
to permit plaintiff to amend his petition by correctly stating its place of
incorporation.

    [Ed. Note.—For other cases, see Parties, Cent. Dig. § 164; Dec. Dig.
§ 95.*]

In Error to the Circuit Court of the United States for the Northern
District of Ohio.

George Edwards, for plaintiff in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. On the 6th day of April, 1906, Her-
nan, the plaintiff in error, brought suit in the court below against the
American Bridge Company by filing his petition, taking out a summons,
and delivering the latter to the marshal for service. The summons did
not describe the citizenship of the American Bridge Company, but in
his petition the plaintiff described it as "a corporation organized under
the laws of New York." The complaint of the petition was of a per-
sonal injury sustained by him on September 8, 1905, while in the em-
ployment of the American Bridge Company, in its shop at Ambridge,
in the state of Pennsylvania, in consequence of the negligence of the
company in the particulars stated, whereby a heavy iron column fell
upon him, causing the fracture of all the bones of both his feet and oth-
er injuries. The company operating the works at Ambridge, Pa., and
in whose employment the plaintiff was, and by whose negligence he suf-
fered the injury, was organized under the laws of New Jersey. There
was, however, another corporation of the name of the American Bridge
Company, organized under the laws of New York. It was a finding of
fact by the court below that one Clarence E. Sanders, "having his of-
fice and location in Cleveland, Ohio, was at all of the times mentioned
in said pleadings and return of said summons the person designated by
said American Bridge Company, a corporation of New Jersey, and
American Bridge Company, a corporation of New York, as the agent
or officer in charge of the business of both of said corporations under

---

* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the provisions of section 148a of the Revised Statutes of 1908 of Ohio, and was at all of said times the proper officer upon whom to serve a summons issued against either or both of said companies."

The return of the marshal was as follows:

"Received this writ at Cleveland, Ohio, April 6, 1906, and on April 16, 1906, at Cleveland, Ohio, I served the same on the within named the American Bridge Company, a corporation, by handing a true and certified copy hereof with all the endorsements thereon to Clarence E. Sanders, designated under the statute in such cases made and provided to accept service for the afore-named corporation in Ohio.        F. M. Chandler, U. S. Marshal,
"By. F. M. Fanning, Deputy."

The American Bridge Company of New York on May 19, 1906, filed the following answer:

"Patrick Hernan, Plaintiff, v. American Bridge Company, Defendant.   No. 7076.   Answer.

"Now comes the American Bridge Company, defendant herein, and admits that it is a corporation organized under and in pursuance of the laws of the state of New York, for the purpose of carrying on the business of bridge building.

"Further answering said petition, defendant denies each and every other allegation thereof.

"Wherefore, having fully answered, defendant asks to go hence with its costs."

And the cause was continued to the October term, 1906. At the October term the plaintiff, upon leave granted, filed an amended petition, and the cause was continued to the ensuing February term. At that term the cause was again continued to the next term; but meantime, and on March 19, 1907, the American Bridge Company filed a motion, as follows:

"Patrick Hernan, Plaintiff, v. American Bridge Company, Defendant.   No. 7076.   Motion.

"Now comes the defendant, the American Bridge Company, and moves the court to require the plaintiff to make his amended petition filed herein more definite and certain in the following particulars, to wit:

"(1) That he state therein in what particular or particulars the workmen employed by the defendant to assist the plaintiff were 'incompetent for the performance of the duty of the place assigned to them.'

"(2) That he state what tools were 'old and of insufficient numbers.'

"(3) That he state what tools were defective, and in what the defects consisted."

And the cause was continued to the April term. During the April term the court entered an order sustaining the motion to make his amended petition more definite and certain. On September 26, 1907, the American Bridge Company filed its answer to the second amended petition. An action against the New Jersey corporation was barred by the statute of limitations on the 8th of that month. This answer was the same as that above set forth to the original petition, except that it added to the first paragraph, which admitted its incorporation under the laws of New York, the following:

"Denies that it, as such corporation, at the times mentioned in the petition, was engaged in the business of bridge building, and was the owner and engaged in the operation of certain shops used in the manufacture of bridges in Ambridge, in the state of Pennsylvania; denies that on, and for some time prior to, September 8, 1905, plaintiff was in its employ."

Two days thereafter the cause was continued to the ensuing October term. At the October term, upon leave granted by the court, the plaintiff filed a third amended petition, amplifying the particulars of the accident described in the original petition, and describing the citizenship of the parties, as follows:

"Says: That he is a citizen of the state of Ohio and resident of the Eastern Division of the Northern District of Ohio, and that defendant, American Bridge Company, is a citizen of, and is a corporation organized under the laws of, a state other than Ohio, which plaintiff believes to be the state of New Jersey, but is uninformed as to the same, and as such corporation, defendant, at all of the times hereinafter mentioned and for some time prior thereto, was engaged in the business of bridge building, and was the owner and engaged in the operation of certain shops used in the manufacture of bridges, in Ambridge, in the state of Pennsylvania."

The cause was further continued to the February term. And on March 24, 1908, upon a finding of facts, that in regard to the agency of Sanders, above recited, and the further fact, "and that the bridge works at Ambridge, in the state of Pennsylvania, described in plaintiff's third amended petition, was operated, at all of the times mentioned in said pleadings and return, by said American Bridge Company, a corporation of New Jersey," the court ordered as follows:

"And the plaintiff, not desiring to plead further or have issued an alias summons, it is therefore considered, adjudged, and decreed by the court that said court is without jurisdiction to try this action, and that the petition and action of said plaintiff be, and the same hereby are, dismissed, at plaintiff's costs."

The reasons for this action of the court are more fully explained in an opinion of the learned judge which comes up with the record; and, as those reasons form the subject for discussion, it seems best to exhibit them in the judge's own language. He says:

"In this case a petition was filed against the American Bridge Company, a corporation organized under the laws of the state of New York. The description of the defendant in the second amended petition is as follows:

" 'American Bridge Company is a corporation, organized under the law of the state of New York, and is a citizen of the state of New York.'

"The action is for personal injury sustained by the plaintiff.

"Service of summons was made upon the authorized representative of the defendant in this state.

"September 26, 1907, the defendant filed its answer admitting that it was a corporation organized under the laws of the state of New York and that it is a citizen of the state of New York, but denying all the other allegations of the second amended petition.

"Thereafter a motion was filed by the plaintiff asking leave to amend the second amended petition by making the American Bridge Company of New Jersey a party defendant.

"The right of the plaintiff to make this amendment is not disputed, but the contention of the plaintiff is that there would be no necessity for serving summons upon the American Bridge Company of New Jersey upon its representative in the state of Ohio, and that as against that defendant the date of the beginning of the action would not be at the time of serving the summons upon the new defendant, but the time of beginning the action against the American Bridge Company of New York.

"The claim is made and assumed in argument that a very close relation exists between the American Bridge Company of New York and the American Bridge Company of New Jersey, and that they both have the same representative in Ohio, upon whom service of process may be had, and it is therefore

contended that service upon the representative of the American Bridge Company of New York was a service upon the American Bridge Company of New Jersey, because the representative of the latter company was at the same time a representative of the former company.

"Of course, the largest latitude in this matter of amendment—that is, as to parties—ought to be allowed. If there had been a misdescription of the party where no question of its identity was really involved, such an amendment might be permitted; but there can be no question as to the separate identity of these corporations, and the suit that was originally brought against the American Bridge Company of New York cannot be, by any sort of substitution or logic, held to be a suit against the American Bridge Company of New Jersey. The identity of the representative of both companies as one person does not at all affect the situation. The American Bridge Company of New Jersey has never been sued, and, if brought into this case, it must be brought in as any other newly sued defendant must be, and the date of the bringing of the action against the newly sued defendant must be the date upon which summons is served upon it."

It would seem that, if the view taken of the case by the court was correct, the third amendment of the petition was in effect a discontinuance as to the former defendant and the substitution of an entirely new one. The defendant being the sole defendant, it was not the case of amending by bringing in another party, but an entire change of the party defendant, which could not, as must be conceded, be done upon any admissible theory in the practice of amending legal proceedings. If this be so, the amendment should not have been permitted at all. But it is possible that, when the judge said that "the right of the plaintiff to make this amendment is not disputed," he meant that it was not disputed by counsel.

The deeper and more vital question is whether the court had the power to authorize an amendment which should correct the description of the defendant in the first petition; for it is clear from its opinion that, if it had supposed it had the power, it would have exercised it by allowing the amendment. It is proper in this connection to observe that our authority to review the denial of the court below rests upon this ground, namely, that it is a question of power and not of discretion. The granting leave to amend is ordinarily a matter addressed to the discretion of the court, and its determination is for that reason not reviewable. This we have many times held. But where it appears that the court's discretion was not exercised because of a supposed lack of authority, it is shown that the party has been denied his legal right to require the court to entertain the question on its merits; and in such case the foundation for a writ of error is laid. Felton v. Spiro, 78 Fed. 576, 24 C. C. A. 321; Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917.

To resume: The question before us is, did the court, in the circumstances of the case, have the power to allow the amendment which was in substance and effect a correction of the misdescription of the defendant? The plaintiff was pursuing the company which was operating the plant at Ambridge, Pa., and in whose employment there he had been injured. That was the substance of the matter. The summons he sued out was in apt form for that purpose. The writ was served upon the proper agent of the party he was suing. So far, all was well. But he made a mistake in his petition in supposing it was

incorporated in New York and in so describing it. He had no claim to a cause of action against the New York corporation. He had no thought of suing it, even if he had known of the existence of such a corporation, which in all probability he did not. When the common agent of the two companies was served with the summons, he was bound to take steps to find out which company was intended. He was the agent or officer in charge of the business of both the corporations, and, doubtless because of that fact, had been designated under the statute to accept service of process. It may be said that he might settle that by referring to the petition, and would find that the defendant there described was the New York corporation. But he would also find there that the corporation intended to be charged was the corporation operating the plant at Ambridge, Pa., notwithstanding the description of it as a New York corporation. And it is scarcely to be believed that he was so oblivious to the affairs of his company as not to know which company was operating the plant at Ambridge. These companies, if there were two of them, and not one incorporated in each state, having, as they did, an identical name and an identical agent, exposed one bringing suit in Ohio to embarrassment and possible miscarriage of justice, which they should have taken measures to prevent. To one who, proposing to sue the New Jersey corporation, should be informed, and correctly, that Sanders was its agent, and should not be informed of the existence of another company for which he was also agent, the situation would be the same to him as if there were no other corporation having the name of American Bridge Company. In such a case there would be no dual agency. The single agent would understand that the statement of the place where his company was incorporated was a mistake; and especially would he have no doubt or hesitation when, on looking at the petition, he found that his company was the one complained of, and the service of process upon him would confirm that understanding. Then, again, before the filing of an answer, counsel must be employed and consultations must be had, when it would be inevitable that the mistake should be discovered, and that, as in the present instance, another company was the one intended by the writ and the petition. The New York company appeared and answered, and naively admitted its incorporation in New York, but by an otherwise general denial gave no sign of the mistake which was manifest to itself. The case was continued from term to term, because it was not reached, as we infer, for there is no statement that it was continued on motion of either party. There is only the usual statement which indicates the continuance of unfinished business. After the second amended petition was filed, and while the time when a new suit against the New Jersey corporation would be barred by the statute of limitations was approaching, the New York company craved an order that the plaintiff be more specific about the particular respects in which the workmen were incompetent, what tools were old and insufficient in number, and what tools were defective, and in what the defects consisted. These were matters of no consequence to it if it were not the corporation operating the plant, nor essential to its defense. Then, a few days after the expiration of the time when the statute of limitations would bar a fresh action against the

New Jersey company, the New York company filed an answer to the second amended petition, in which, besides the general denial, it denied that it was engaged in building bridges at Ambridge or in the operation of the shops there, or that the plaintiff was in its employ. Up to this time there had been only the general denial, and nothing to awaken the plaintiff to the knowledge that a corporation strange to him was defending the suit, but the amendment to the general denial in the final answer seems to have brought him to a realization of the situation. Then he tried to get the genuine defendant before the court by amending his petition. It is manifest that the New York company was simply personating the New Jersey company, and that the effect was, if such proceedings were given effect, to shield the real defendant until the latter was safely behind the statute of limitations. There is no direct proof that the New Jersey company actually sanctioned the proceedings of the New York company, except it be by the action of its agent in diverting the pursuit. But it is the beneficiary of the fruits, and if it objects to the amendment it must avail itself of the action of the New York company and its agent.

In these circumstances, was it rightly held by the court below that the correction of the petition by describing the defendant as a New Jersey corporation, instead of a New York corporation, was beyond the power of the court, in that it brought into the suit a new party? The authority vested in the federal courts to amend the process, pleadings, and proceedings in cases brought before them is ample; probably not less so than in any other system of jurisprudence. By section 32 of the judiciary act (Act Sept. 24, 1789, c. 20, 1 Stat. 91; Rev. St. § 954, [U. S. Comp. St. 1901, p. 696]) it was ordained that:

"Sec. 954. No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect, or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such courts shall amend every such defect and want of form, other than those which the party demurring so expresses; and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

And, again, by the act of June 1, 1872, c. 255, § 3, 17 Stat. 197, Rev. St. § 948 (U. S. Comp. St. 1901, p. 695), it was declared that:

"Sec. 948. Any Circuit or District Court may at any time, in its discretion, and upon such terms as it may deem just, allow an amendment of any process returnable to or before it, where the defect has not prejudiced, and the amendment will not injure the party against whom such process issues."

Probably the limitation in section 948, that the amendment shall not · injure the party defendant, exists by implication in section 954, for the court would not convert the means devised for promoting justice into a weapon for perpetrating a wrong. The object of these statutes is to · give effect to the substance of things, lest that be smothered in matters of form. As, for instance, when it is made to appear to the court that the party who asks to amend has sought in good faith to bring suit against another for a cause of action stated, but by some mistake has

misdescribed the other, he should be allowed to correct the mistake if its correction will not injure the defendant. The proviso states the only limitation of the power, whether the limitation be expressed or implied. It is true that there was a person, a corporation, whom the description fitted, but it was not the corporation the plaintiff was suing. And to say that what he has done is to sue a stranger to the cause of action and to hold the plaintiff to it is to exalt the form and ignore the substance. It was the disposition to do this thing, whereby the course of justice was liable to be tied up by mistakes and incongruities in the procedure in causes before the courts, that induced the positive declarations of the statutes referred to. Even at common law, the rule is that:

"The power to amend in case of a misnomer depends not upon the question whether the amendment changes the name, but whether or not it changes the party. If it only cures a mistake in the name of the party by or against whom the suit is prosecuted, it may be made; but if it introduces a different party, it is inadmissible." 1 Encl. of Pl. & Pr. 535.

We think the statutes extend the power of the court to allow an amendment which shall correct the description of the cause of action and of the parties at any stage of the case and in respect to any proceeding in it, whether in the process or pleadings, and that it should be exercised in every case where right and justice require it, and the refusal of it will prevent an injured party from obtaining redress, subject, however, to the proviso that the amendment shall work no injury to the other party. The Circuit Court of Appeals for the Eighth Circuit expressed the opinion in McDonald v. State of Nebraska, 101 Fed. 171, 41 C. C. A. 278, that the defendant must have been misled to his prejudice, must have lost some right in consequence of the mistake of his adversary, to justify him in withstanding the amendment, and that his right to object stands on grounds similar to those of an estoppel. How universally this rule would hold good we are not prepared to say. But we think it safe to affirm that when the other party is not harmed, loses no right, the amendment should be allowed if justice is thereby promoted. The terms and conditions are subject to the order of the court.

The power to amend is not restricted to cases where the person suing or sued is continued in another character, as where by the amendment a person suing as an administrator is turned into his private character suing in his own right, or vice versa, the cause of action being in other respects the same, and cases where the representative of the real party is put out and the real party substituted in his place, as in the case of Manufacturing Co. v. Vroman, 35 Mich. 319, 24 Am. Rep. 558, but extends to cases of misnomer or misdescription of the parties intended to be made such, the cause of action remaining the same, and the other party not deprived of any substantial right, as in the case of Welch v. Hull, 73 Mich. 47, 40 N. W. 797, a case much like the present, where the action was brought by Welch against three defendants alleged to be members of a partnership, one of whom was called in the summons and the subsequent pleadings and proceedings Harry Hull, and there was a Harry Hull residing in the county. He was not served, but the appearance of counsel was for

Harry Hull, as well-as for the other defendants. But George F. Hull, and not Harry Hull, was the person in the copartnership, and was the person intended to be described by the name of Harry Hull. The case came on for trial, and, it appearing upon the trial that Harry Hull was not a member of the partnership, the defendants moved for the direction of a verdict in their favor. The plaintiff asked leave to amend the proceedings in the cause by striking out the name "Harry" wherever it appeared and inserting instead the name of "George F." But the trial·judge denied the motion, holding, as did the judge here, that the summons had been issued against "Harry Hull," that he had ·appeared in the case, and that to allow at that stage of the case a discontinuance as to "Harry Hull," or an amendment of the pleadings and the insertion of "George F. Hull," would be to admit a new party to the record, and that he had no authority to allow such an amendment. The verdict and judgment having passed for the defendants, the plaintiff took the case to the Supreme Court of Michigan, which reversed the judgment, directed the amendment which the court below had denied, and ordered a new trial. This case is peculiarly applicable, in that there was a person whom the name given in the process and pleadings fitted.

We turn, then, to inquire whether the American Bridge Company of New Jersey will suffer any injury if the course which we think is within the power of the court, and which we propose, is adopted. None has been suggested, and we can conceive of none, unless it be that the defendant will be deprived of the benefit of the statute of limitations. Perhaps it would be sufficient to say that in the circumstances of this case it is not entitled to the benefit of it. But, further, it is not in general regarded as a right to be protected against the justice on which the right to amend is given. On the contrary, it is deemed by the courts that the utter loss of his cause to the plaintiff is a strong reason for affording him relief. George v. Reed, 101 Mass. 378; Sanger v. Newton, 134 Mass. 308; Miller v. Watson, 6 Wend. (N. Y.) 506; Shieffelin v. Whipple, 10 Wis. 81; and the other cases cited in 1 Encl. of Pl. & Prac. 519, note 2.

The substantive cause of action remains the same, the plaintiff is the same, and the party who caused the injury to him is the same. The process sued out is right enough. The petition contains a mistake in describing the intended defendant, and the mistake is one easily condoned when it is learned that there were two corporations bearing the same name. It was in this knot of identity of name and the identity of agents that the suit became diverted. The description of the defendant did not touch the merits, but was made only for the purpose of showing federal jurisdiction. The added words of description were not part of the name of the corporation. If the American Bridge Company of New Jersey had executed an obligation by its proper corporate name, but had described itself as a corporation organized under the laws of New York, on the facts being made to appear, doubtless the misdescription of the state where it had been incorporated would have been held immaterial to the validity of the obligation. It would seem to us, independently of any intended diversion by the dual agent, or of any masking of the real defendant, and supposing there was a

mutual error on the part of the plaintiff and the defendant's agent, enough would remain to justify the amendment when the error became known, rather than to turn the plaintiff off without a trial, and with a lost cause of action. We have adverted to circumstances tending to show that the plaintiff's continuance in his mistake was due in part, at least, to the misleading dalliance of the counterfeit defendant, and, if our animadversions are well founded, they strengthen the reasons for correcting the error which occurred.

In Garland v. Davis, 4 How. 131, 11 L. Ed. 907, the Supreme Court was confronted with a record in which it appeared that the cause had been tried upon false issues made by the pleadings of the parties, and the court, instead of passing on the merits on the record as it stood, reversed the judgment and sent the cause back for amendment and further proceedings, and, because it seemed necessary to the justice of the case, directed it to be reopened and new pleadings made, to the end that the real controversy might be prosecuted and determined.

We think we shall not exceed our authority if, as we propose, we reverse the judgment and direct the court below to entertain an application of the plaintiff, if he be advised to make one, for an order that the petition be amended by stating the citizenship of the plaintiff, and correcting the averment of the citizenship of the defendant by stating its incorporation to have been under the laws of New Jersey, instead of New York, and that thereupon the defendant, the American Bridge Company, have leave to plead anew to such amended petition; that the court make such order and direct that a copy thereof be served upon said defendant or its authorized agent within a time to be therein specified; and that thereupon the court proceed in due course. And it is so ordered.

Since filing the foregoing opinion we have observed that Buffington, District Judge, in a very similar case (Bainum v. American Bridge Co. of New York [C. C.] 141 Fed. 179), held that the court had the power to allow the amendment and permitted it to be made.