CHARLES BARNES CO. v. ONE DREDGE BOAT et al.

(District Court, E. D. Kentucky. April 5, 1909.)

No. 28.

1. ADMIRALTY (§ 6*)—SUBJECTS OF JURISDICTION—"VESSEL."

A pumpboat, which consists of a floating structure equipped with engine, boiler, pumps, pipes, and capstans, used for pumping out coal barges, and which can be moved on the water by means of poles or ropes attached to its capstans or towed, is a navigable structure intended for the transportation of a permanent cargo, to wit, its engine, boiler, pumps, and capstans from place to place where required to do its work, and therefore is a "vessel" and subject to the admiralty jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 88–98; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 8, pp. 7297–7301.]

2. COURTS (§ 502*)—CONFLICTING JURISDICTION—FEDERAL AND STATE COURTS—PROCEEDINGS IN REM IN ADMIRALTY.

Libelant filed a libel in rem in admiralty to enforce a maritime lien for supplies furnished to a pumpboat, but by mistake the libel described a different vessel. This was subsequently corrected by an amended libel, and an attachment was issued and levied on the pumpboat. In the meantime, however, the owner had made a general assignment, and the assignee had taken possession of the boat and brought a suit in a state court for a settlement of the assigned estate. *Held*, that the amended libel related back to the date of filing of the original libel, from which time the suit was one dealing potentially, if not actually, with the pumpboat, and gave the admiralty court jurisdiction over it to the exclusion of the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1392; Dec. Dig. § 502.*

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

In Admiralty. On motion for order of sale.

L. J. Crawford, for plaintiff.

B. F. Graziani, for One Dredge Boat.

COCHRAN, District Judge. This is a libel for supplies or material to the amount of $344.38 furnished to a pumpboat, the property at the time of the Independent Coal Company. The supplies or material furnished were used in equipping it.

This cause is before me on a motion for an order of sale under rules 10 and 11 of the general admiralty rules. This is objected to by defendant on the ground that this court is without jurisdiction of the cause. It is not contended that otherwise it is not proper to sustain the motion and make the order of sale. It is claimed that this court is without jurisdiction on two grounds. One of them is that the pump-

boat sued is not a vessel, and hence not within the jurisdiction of admiralty. I will consider and dispose of this ground before taking up the other. Is, then, the pumpboat a vessel? What is a vessel?

In the case of Cope v. Vallette Dry Dock Company, 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501, Mr. Justice Bradley said that the terms "ships and vessels" are used in "a very broad sense" and include "all navigable structures intended for transportation." In section 3, c. 1, tit. 1, Rev. St. (U. S. Comp. St. 1901, p. 4), a vessel is said to include "every description of water craft or other artificial contrivance used or capable of being used as a means of transportation on water." That statutory definition is somewhat broader than Mr. Justice Bradley's, in that it takes in a navigable structure capable of being used for transportation; whereas, his definition is limited to one intended for transportation. And I do not see why the statutory definition should not govern. If it does, then a "vessel" may be defined to be a navigable structure capable of being used for transportation whether intended to be or actually used for that purpose. Of course, if in addition to being capable of being so used any given navigable structure is intended to be so used or is actually so used, so much the greater reason for holding that it is a vessel. So far, however, as the necessities of this case are concerned, it is not required that we should go beyond Mr. Justice Bradley's definition, and a vessel will be treated as a navigable structure intended for transportation.

Such being the case, of course, in order to a navigable structure being a vessel, it is not essential that it have on board means by which it may be propelled upon the water. The earliest kind of vessel, to wit, the sailing vessel, did not have such means, as it was propelled by the wind, which was outside of it. It simply had means by which the force of the wind could be applied to the vessel. So frequently navigable structures intended for transportation have been held to be vessels, though without means of propulsion aboard and yet not propelled by the wind. A scow was held to be a vessel in the following cases, to wit: The General Cass, Fed. Cas. No. 5,307; Endner v. Greco (D. C.) 3 Fed. 411. A barge was so held to be in the following cases, to wit: The Dick Keys, Fed. Cas. No. 3,898; Disbrow v. Walsh Bros. (D. C.) 36 Fed. 608; The Wilmington (D. C.) 48 Fed. 567; Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373. In the Dry Dock Case, supra, Mr. Justice Bradley, after referring to an English case in which was involved a "hopper barge" used in carrying "men and mud," said:

"Perhaps this case goes as far as any case has gone in extending the meaning of the terms 'ship' or 'vessel.'"

In the case of Wood v. Two Barges (C. C.) 46 Fed. 204, certain coal barges were held not to be vessels within admiralty rule No. 2. A floating circus was held to be a vessel in the case of the W. F. Brown (D. C.) 46 Fed. 290. A canal boat was so held to be in the case of The Kate Tremaine, Fed. Cas. No. 7,622. A raft was so held to be in the case of Seabrook v. Raft R. R. Cross-Ties (D. C.) 40 Fed. 596. A dismantled steamboat was so held to be in these cases, to wit: The Old Natchez (D. C.) 9 Fed. 476; The City of Pittsburg (D. C.) 45 Fed. 699. In the first case the structure in question was intended to be used

as a wharfboat. In the other it was intended to be used as a pleasure barge for transportation of excursion parties. From these two cases must be distinguished the case of The Hendrick Hudson, Fed. Cas. No. 6,355, where a dismantled steamboat was held not to be a vessel. It was in use as a hotel or saloon.

In each of these cases where the navigable structure in question was held to be a vessel, it was intended to be, if not actually, used for transportation. The thing transported, however, was aboard of the structure temporarily. It came and departed. Must, then, the transportation which the navigable structure is intended to effect be of something that is temporarily aboard in order that the structure may be held to be a vessel? Or is a navigable structure that is intended to be used in transporting something that is permanently aboard of it a vessel? I see no reason in principle why the length of time the thing is to be aboard the structure and transported by it should have any bearing on the question whether it is or not a vessel. It has therefore been held in a number of cases that a steam dredge is a vessel. Such structure transports, and is intended to transport permanently, the shovel and the steam outfit with which it does its work. It is true that it transports temporarily the crew that operates it and the coal from which the steam is generated; but the ground upon which it has been held to be a vessel is not because of such temporary transportation. It has been so held in the following cases, to wit: The Alabama (D. C.) 19 Fed 544; The Alabama (C. C.) 22 Fed. 449; The Pioneer (D. C.) 30 Fed. 206; Aitcheson v. Endless Chain Dredge (D. C.) 40 Fed. 253; The Atlantic (D. C.) 53 Fed. 609; The Starbuck (D. C.) 61 Fed. 502; Saylor v. Taylor, 77 Fed. 476, 23 C. C. A. 343; The International (D. C.) 83 Fed. 840; McRae v. Bowers Dredging Co. (C. C.) 86 Fed. 344; Bowers Hydraulic Dredging Co. v. Federal Contracting Co. (D. C.) 148 Fed. 290.

The cases of The Alabama (D. C.) 19 Fed. 544, and The Alabama (C. C.) 22 Fed. 449, present the same case; one being the decision in the court of original jurisdiction, and the other the decision in the appellate court. In that case and the case of The Starbuck (D. C.) 61 Fed. 502, there was involved not simply the dredge, but the dredge and its scows. In both cases they were treated as a unit, and the scows were regarded as affecting somewhat the character of the dredge. In The Alabama Case on appeal Judge Pardee said:

"The parties to this case have treated the dredge and scows as one thing, one plant, built and operated as one, as one complete whole carrying on one business, and having but one purpose. If the parties are right, in thus treating the dredgeboat and scows as one craft or thing, then it seems clear that the purpose and business of that craft is largely navigation and water transportation."

And again he said:

"The dredgeboat by itself might not be up to the test."

In The Starbuck Case Judge Butler said:

"That a dredge and her scows are to be treated as one concern and are subject to the admiralty jurisdiction has been several times decided, and I think rightly."

169 F.—57

In the case of In re Hydraulic Steam Dredge No. 1, 80 Fed. 545, 25 C. C. A. 628, Judge Jenkins seems to think that such is the only basis on which a steam dredge can be held to be a vessel. He there said:

"The decisions holding that a steam dredge is within the admiralty jurisdiction may perhaps be rested upon the ground that a dredge is not only a floating structure upon the waters, but, as stated by Judge Pardee in The Alabama (C. C.) 22 Fed. 449, is accompanied by a scow, and that the scow and the barge are to be deemed one movable thing upon the waters, engaged in a common enterprise, and carrying the excavated earth by water transportation, and so engaged in navigation and related to commerce. Judge Pardee observes, however, that 'the dredgeboat by itself might not be up to the test.'"

But a consideration of the other dredgeboat cases cited will show that it by itself is regarded as being up to the test, and no good reason can be urged why it should not be so regarded.

In the case of Pile Driver E. O. A. (D. C.) 69 Fed. 1005, Judge Swan, in referring to The Pioneer Case, which was the next dredgeboat case to arise after The Alabama Case, which seems to have been the first, said:

"The case of The Pioneer (D. C.) 30 Fed. 206, which sustains a lien upon a dredge because it was capable of use in navigation without its machinery, although its use was to transport the shovel and machinery with which it was equipped, is irreconcilable with the cases of The Hendrick Hudson, 3 Ben. 419, Fed. Cas. No. 6,355; The Pulaski (D. C.) 33 Fed. 383; Ruddiman v. A Scow Platform (D. C.) 38 Fed. 158; The Big Jim (D. C.) 61 Fed. 503."

The cases referred to are really not irreconcilable with the Pioneer Case. I will not, however, take the time to show this, as the cases are so numerous which hold that a dredgeboat apart from its scow is a vessel that it must be accepted now that it is. The only discordant notes are those of Judges Pardee, Swan, and Jenkins; Judges Pardee and Jenkins simply questioning whether a dredge in such condition is a vessel.

Within the principle of these dredgeboat cases are the cases of The Hezekiah Baldwin, Fed. Cas. No. 6,449, and The Public Bath No. 13 (D. C.) 61 Fed. 692. In The Baldwin Case a canal boat upon which had been built an elevating apparatus for hoisting grain, without motive power of its own or capacity for cargo except the permanent cargo of its elevator, was held to be a vessel; in The Public Bath Case, a bathhouse built on boats. The boats were designed to float, to uphold, and to transport the bathhouse wherever and whenever desired. It was held to be a vessel. Judge Brown said:

"The bathhouse was in effect the permanent cargo of the boats."

The conclusion to be drawn from these dredgeboat, floating elevator, and bathhouse cases therefore is that a navigable structure which transports or is intended to transport a permanent cargo, and nothing else, is a vessel. In the dredgeboat case the thing transported was to facilitate navigation, and in the elevator case to facilitate transportation. In the bathhouse case it was not to facilitate either.

Before proceeding to a consideration of the particular structure here involved, notice should be taken of certain decisions that may be

thought to affect the conclusion thus reached. Of these are the dry dock cases. They are Cope v. Vallette Dry Dock (D. C.) 10 Fed. 142; Snyder v. A Floating Dry Dock, etc. (D. C.) 22 Fed. 685; Cope v. Vallette Dry Dock, 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501. The dry dock is a floating structure. It is possible that it is navigable, though as to this I have not taken the pains to ascertain from the facts presented in those cases. It is sufficient to say that it is not intended for transportation of anything.

In the case of Woodruff v. One Covered Scow (D. C.) 30 Fed. 269, the structure involved is described as a scow or float with a house on it nearly the size of the plant. It was used to store oars and sails of small boats landing at it and as a means of egress therefrom to the adjoining wharf and thence to the shore. It was held not to be a vessel. Judge Benedict said:

"But this structure, being stationary and never employed in the transportation of freight or passengers from place to place upon the water, cannot be held to be a ship or vessel."

In a line with this we have the case of Ruddiman v. A Scow Platform (D. C.) 38 Fed. 158, where it was held that a floating structure designed to be moored alongside a wharf so that carts containing refuse to be dumped into boats can be driven over it from the wharf was not a vessel. Judge Brown, distinguishing the case from the floating elevator case, supra, said:

"But in that case not only was the structure designed for the uses of commerce, but it was her constant business to move from place to place, as a vessel, in her peculiar work; in both respects differing from the present case. This structure though, as I have said, capable of being moved, was designed to be comparatively permanent. By its nature, build, design, and use, it belongs, I think, to that considerable class of cases, such as dry docks, floating saloons, bathhouses, floating hotels, floating boathouses, and floating bridges, all of which have been held not to be vessels within the maritime law."

This brings us to two cases cited on behalf of defendant which come closer to the dredgeboat, floating elevator, and bathhouse cases than any yet considered. They are the cases of The Big Jim (D. C.) 61 Fed. 503, and Pile Driver E. O. A. (D. C.) 69 Fed. 1005. The structure involved in The Big Jim Case is called a marine pump. When at work it rested on piles driven in the ground under the water, and its work was to suck mud from the bottom of the water or from scows alongside and force it on the adjacent land. It was capable of being towed from place to place where its services were needed and has been so towed. It was held not to be a vessel. As to this case it is to be noted that it was decided by Judge Butler, who held in The Starbuck Case that a dredge was a vessel, and seems to have been influenced in so holding by the fact that it was accompanied by a scow, and the dredge and scow were one thing. The structure involved in the Pile Driver E. O. A. Case was a floating platform which carried a derrick engine and pile-driving apparatus and was furnished with a wheel by which to propel itself about the bay or harbor. It was held not to be a vessel. It seems to me that this decision is unsound. It is in direct conflict as to principle involved with the dredgeboat

cases. Judge Swan recognized this in distinguishing The Alabama Cases, supra, because the dredge was accompanied by scows, and in holding that The Pioneer Case, where the dredge was not so accompanied, was incorrectly decided.

In conflict with this decision is the case of Lawrence v. Flatboat (D. C.) 84 Fed. 200, affirmed on appeal by the Circuit Court of Appeals of the Fifth Circuit in the case of Southern Log & Cart Supply Co. v. Lawrence, 86 Fed. 908, 30 C. C. A. 480, where it was held that a flatboat with a pile driver and its engine erected thereon, mainly used in constructing bulkheads for the erection of channel lights, which also transported material used in the work and was towed by a tug, was a vessel.

. I therefore conclude that a navigable structure intended for the transportation of a permanent cargo that has to be towed in order to navigate is a "vessel," and that admiralty has jurisdiction of claims against and liens upon such a structure.

This brings us to the question as to the character of the structure involved here. I would note first the name by which it goes. It is called a "pumpboat." It is so called in the deed of assignment under which B. F. Graziani claims it as assignee of the Independent Coal Company. This indicates that to some extent it has been regarded by those who have had to do with it as a boat. A small vessel is one of the definitions of the word "boat." Again, I notice that in the deed of assignment referred to it is treated as having not only "machinery and tackle," but "sails, furniture, and apparel." It states that amongst other things thereby assigned are a "pumpboat, its machinery, sails, furniture, and apparel." In the affidavits filed bearing on the nature of the structure there is no reference made to the sails, furniture, and apparel of the pumpboat, except the affidavit filed on behalf of defendant, which states that it has no sails.

The plaintiff has filed three affidavits; the affidavits of its president and two boat builders, one of whom inspected the boat in question with a view of purchasing it at sale hereunder. The defendant has filed eight affidavits; the affidavits of the present claimant, Mr. Graziani, the assignee of the Independent Coal Company, former owner of it, of the president of said company, and six other men, all of whom have had such connection with the structure in question as to fit them to describe it correctly. In some particulars there is a sharp conflict between the two sets of affidavits hard to account for. According to plaintiff's affiants, the structure has a scow bow, scow stern, a deck fore, and a deck aft, and a cock pit in the center covered by cargo box. According to defendant's affiants, not one of these things is true of the structure. The boat is square in front and rear and has no decks or cock pit. A photograph was promised me so that I might determine myself, but it has not been forthcoming. The conflict, however, is not material. It is agreed that it is equipped with a double engine, a boiler, pumps and pipes connecting the boiler and pumps, and two capstans, a steam one in front and hand one in rear. It is used for the purpose of pumping water from coal barges and is navigable, i. e., it can be shoved with poles or drawn by ropes or towed. According to plaintiff's affiants, the sole object of the steam engines and capstans

is to propel the structure to such places as it may be desired to move it. This is done by means of an anchor or other thing to tie to. It is conceded by defendant's affiants that it can be propelled in this way, but it is denied that this is what the engines and capstans are for. It is claimed that their purpose is, by connecting with barges desired to be pumped by means of ropes, they can be drawn to it, and that this is the sole use that has been made of them. At first the hand capstan was made use of, and, this not working satisfactorily, the steam engines and capstans were added. It would seem that, if this apparatus can be made use of to draw barges to the pumpboat, it can also be made use of in drawing the pumpboat to the barges.

The pumpboat was constructed by said coal company and has never been used by any one but it, and it has used it in its coal harbor in the Ohio river at Ludlow, Ky., in pumping out its coal barges. In doing this work it has been either at one end of the fleet or the other and has been moved from one end to the other with poles or by drawing it with ropes. It is capable of being towed to any place on the Ohio river where its services might be needed.

The conclusion I draw from all this is that the pumpboat in question is a navigable structure intended for transportation of a permanent cargo, to wit, its engines, boiler, capstans, pumps, and pipes, in order to do the work of pumping where needed, and that therefore it is a "vessel" and subject to admiralty jurisdiction.

The other ground upon which it is claimed that this court is without jurisdiction of this cause is that the Kenton circuit court first acquired jurisdiction of the subject-matter of the controversy here, to wit, the pumpboat. The assignment was made on the 2d day of November, 1908, and upon its being made the assignee took possession of the boat along with the rest of the property assigned. On the same day he brought suit in the Kenton circuit court for the settlement of the estate in his hands for administration.

This libel was brought prior to the assignment and the bringing of said suit, but the attachment under which the boat was taken was not sued out and levied until November 12, 1908, after the assignment and bringing of the suit in the state court. This circumstance, however, is not sufficient to give the state court prior jurisdiction.

In the recent case of Westfeldt v. North Carolina Mining Co. (C. C. A.) 166 Fed. 706, Mr. Chief Justice Fuller, in referring to the rule that in matters of concurrent jurisdiction the court to which the jurisdiction first attaches holds the case to the exclusion of the other until the final determination of the matters in dispute, said:

"That rule is not limited in its application to cases where property has actually been seized under judicial process before the institution of a second suit, but is applicable to actions dealing actually or potentially with specific property, and it does not rest simply on comity but on necessity."

This, however, does not dispose entirely of the question we have here. The libel as originally brought was not against the pumpboat, but against a coal elevator float, and it was not until after the bringing of the suit in the state court that it was made a suit against the pumpboat, which was done by an amended libel filed on November 12, 1908; but it was by mistake that the suit was brought originally against the

coal elevator float and not against the pumpboat. It was to the latter, and not to the former, that the supplies and material forming the basis of the claim were furnished. This mistake is made to appear fully in the amended libel.

The amended libel related back to the original libel, and the libel, by reason of the amendment, must be treated as originally against the pumpboat. There was therefore pending in this court prior to the institution of the suit in the state court a libel dealing potentially, if not actually, with the pumpboat, and by reason of this priority this court, and not the state court, has jurisdiction thereof. See the case of Hernan v. American Bridge Co. (recently decided by Circuit Court of Appeals, Sixth Circuit) 167 Fed. 930.

The motion for an order of sale is sustained.